UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN DEPARTMENT OF
ENVIRONMENT, GREAT LAKES,
AND ENEGRY, *et al.*,

       Plaintiffs,

v.

STS HYDROPOWER, LLC, *et al.*,

       Defendants.
_____/

CASE NO. 1:22-CV-269

HON. ROBERT J. JONKER

## OPINION AND ORDER

This case arises out of a drawdown of Morrow Lake for repairs of Morrow Dam. Plaintiffs Michigan Department of Environment, Great Lakes, and Energy and Michigan Department of Natural Resources allege that Defendants STS Hydropower, LLC and Eagle Creek Renewable Energy, LLC grossly mismanaged the drawdown, causing environmental harm. Plaintiffs filed this case in Ingham County Circuit Court, asserting six state law statutory and common law claims and no federal causes of action. On March 23, 2022, Defendants removed this action from State Court to this Court, invoking federal question jurisdiction under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). On April 22, 2022, Plaintiffs filed a Motion to Remand for lack of subject matter jurisdiction.

### I.    FACTUAL BACKGROUND

In 1985, the Federal Energy Regulatory Commission ("FERC") issued an exemption from licensing under the Federal Power Act ("FPA") to Defendant STS Hydropower's predecessor. The exemption allowed the predecessor to build a hydroelectric project, known as Morrow Dam, on the Kalamazoo River. On September 15, 1987, the exemption was transferred to STS Hydropower,

Ltd., which was later converted to the limited liability company that now owns Morrow Dam. Defendant Eagle Creek Renewable Energy is the parent company of STS Hydropower, and along with STS Hydropower, allegedly operates and manages repairs to the Dam.

Plaintiffs Michigan Department of Environment, Great Lakes, and Energy ("EGLE") and Michigan Department of Natural Resources ("DNR") allege that in November 2017, FERC notified Defendants of the need to repair the tainter gates at Morrow Dam. On October 17, 2019, STS Hydropower informed FERC that it discovered damages to the trunnion arms on two tainter gates. Defendants then decided to draw down Morrow Lake to repair the gates. On October 31, 2019, Eagle Creek notified Plaintiffs that Defendants would be conducting an emergency drawdown of Morrow Lake. Defendants conducted the drawdown of the Lake from October 31, 2019 to November 22, 2019. On November 27, 2019, EGLE sent a letter to Defendants, notifying them that they must comply with Part 301 of the Michigan Natural Resources and Environmental Protection Act ("NREPA") by receiving a permit for the drawdown. Plaintiffs allege that Defendants failed to submit a permit application before conducting the drawdown.

On June 29, 2020, Defendants submitted plans to FERC for repair of the Dam gates. In July and September 2020, EGLE issued two violation notices to Defendants, notifying them of NREPA violations. In response, Defendants submitted information about their plans for the repairs and installed turbidity curtains. FERC also directed Defendants to obtain necessary permits, to mitigate water quality and sedimentation issues, and to coordinate with the State in their efforts. On October 23, 2020, EGLE issued a permit to STS Hydropower under Part 301 for dredging and other activities.

In December 2020, the gate replacement was completed. By January 12, 2021, Morrow Lake was raised back to its normal elevation. The drawdown was only supposed to last four months

2

but actually lasted about thirteen months. Plaintiffs allege that they attempted to avoid a full drawdown and to minimize the environmental impact, but Defendants did little to prevent the environmental impacts besides reducing the rate at which they drew down the Lake. Plaintiffs further allege that Defendants have caused significant public safety hazards, massive damage to the State's natural resources, and significant impediments to recreational use. Specifically, hundreds of thousands of cubic yards of sediment were released down the Kalamazoo River, stretching approximately 30 miles past Morrow Dam.

On March 1, 2022, Plaintiffs filed this action in Ingham Circuit Court. Plaintiffs brought six counts against Defendants, alleging that Defendants violated Parts 17, 31, 301, and 303 of the NREPA, and that their actions constituted conversion and public nuisance. All claims assert state law causes of action. Plaintiffs seek relief, including an order under Part 17 that requires Defendants to repair the damage to the State's natural resources. Citing *Grable*, Defendants removed the action to this Court on March 23, 2022. Now before the Court is Plaintiffs' Motion for Remand.

## II.   LEGAL STANDARDS

A defendant may remove to a district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). As courts of limited jurisdiction, federal courts may exercise only those powers authorized by the Constitution and statute. *Hale v. Morgan Stanley Smith Barney LLC*, 982 F.3d 996, 997 (6th Cir. 2020) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Thus, "[b]efore a federal court takes up a case's merits, it must assure itself of its jurisdiction over the case's subject matter." *Miller v. Bruenger*, 949 F.3d 986, 990 (6th Cir. 2020). It is presumed that a cause of action lies outside the court's limited jurisdiction, and "[t]he burden of establishing the contrary rests upon the party asserting jurisdiction." *Vander Boegh v. EnergySolutions, Inc.*, 772

3

F.3d 1056, 1064 (6th Cir. 2014). Federal subject matter jurisdiction "cannot be consented to or waived[.]" *Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1022 (10th Cir. 2012). "[I]f jurisdiction is lacking, dismissal is mandatory." *Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 890 (6th Cir. 1998) (citing Fed. R. Civ. P. 12(h)(3)).

Federal courts generally have subject matter jurisdiction either through diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C. § 1331. Diversity jurisdiction exists when (1) the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and (2) there is complete diversity of citizenship between the disputing parties. 28 U.S.C. § 1332(a). Here, the parties agree that diversity jurisdiction does not apply because there is not complete diversity of citizenship.

This leaves federal question jurisdiction under 28 U.S.C. § 1331 as the only other possibility. "Federal-question jurisdiction exists when the cause of action arises under federal law." *Miller*, 949 F.3d at 990 (citing *Estate of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1011 (6th Cir. 2018)). In determining whether a cause of action arises under federal law, courts must apply "the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Thus, "[a] defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). There is a narrow corollary to the well-pleaded complaint rule that "arises in the rare circumstance where Congress legislates an entire field of law." *Miller*, 949 F.3d at 994 (citing *Roddy v. Grand Trunk W.R.R.*, 395 F.3d 318, 323 (6th Cir. 2005)). "In other words, the statute must engulf an entire area of state law, transforming a state-law complaint into one that essentially states a federal claim." *Id.* at 995. An essential element of complete

4

preemption is the existence of a federal cause of action that displaces the plaintiff's well-pled state law claim. *Minton v. Paducah & Louisville R., Inc.,* 423 F. Supp. 3d 375, 379 (W.D. Ky. 2019). "A claim arises under federal law, for purposes of federal-question jurisdiction, when the cause of action is (1) created by a federal statute or (2) presents a substantial question of federal law." *Miller*, 949 F.3d at 991.

The most common way federal question jurisdiction is established is when federal law creates the cause of action. *Merrell Dow Pharm.,* 478 U.S. at 808. Here, Plaintiffs did not assert any cause of action created by a federal statute. Violations of the NREPA, as well as claims of conversion and public nuisance are all state law claims. Although Plaintiffs seek declaratory relief, the Declaratory Judgment Act, 28 U.S.C. § 2201, does "not [provide] an independent basis for federal subject matter jurisdiction." *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007). And the claims underlying the request for declaratory relief are state law claims.

The other way federal question jurisdiction may be established is if a state law claim presents a substantial question of federal law. To raise a substantial question of federal law, the court must consider whether "(1) 'a state-law claim necessarily raise[s] a stated federal issue,' (2) that is 'actually disputed and substantial,' (3) 'which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Estate of Cornell,* 908 F.3d at 1014 (quoting *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). In making this determination, the court should consider "whether a federal agency is a party to the action, whether the federal issue is important and dispositive, and how broad the binding effect of the decision will be." *Miller*, 949 F.3d at 993. "This pathway is a 'slim category,' . . . that is to be read narrowly[.]" *Estate of Cornell,* 908 F.3d at 1014 (citations omitted).

### III.  DISCUSSION

*A.  No Federal Issue Is Necessarily Raised, Actually Disputed, or Substantial*

The only potential basis in this case for federal question removal jurisdiction is *Grable* and its progeny. No federal cause of action is asserted, and none of the state law claims asserted falls within the narrow class of claims so completely preempted by federal law as to displace the state cause of action with a federal one. At most, Defendants may be able to assert a preemption defense to some aspects of Plaintiffs' claims, which is not enough to establish federal question jurisdiction. The *Grable* pathway – the only one left – is a narrow one, and Defendants have not satisfied its requirements in this case.

No substantial question of federal law exists here within the meaning of *Grable*. Defendants have failed to identify any disputed federal issue necessarily raised by any of the state law claims, let alone one actually disputed and substantial. To be sure, the construction and maintenance of Morrow Dam is regulated by FERC. FERC is also mentioned in the complaint – FERC issued an exemption to STS Hydropower, Defendants notified FERC of their plans to replace the gates, and FERC helped direct Defendants on the necessary procedures and actions. But none of this necessarily triggers a federal question about Defendants' compliance with various parts of NREPA, or about a possible claim for conversion or nuisance under state law. In *Upper Peninsula Power Co. v. Sliger*, No. 2:11-CV-90, 2011 WL 2634156, at *3 (W.D. Mich. July 5, 2011), a landowner's trespass claim did "not hinge on any federal statute, regulation, or even the FERC license" though the complaint referenced the FERC license and the dams at issue were regulated by federal law. The landowner did not allege that any element of its trespass claim actually turned on a federal issue. *Id.* Here, too, no claim hinges on federal law, and no essential element necessarily incorporates a federal issue. Though FERC is involved with the Dam's

6

operation and repair, FERC's involvement is not enough to confer federal question subject matter jurisdiction. *See Miller,* 949 F.3d at 992 ("federal jurisdiction is not established simply because a state court may have to entertain a federal issue").

Defendants argue that FERC establishes the relevant duty of care concerning the drawdown, maintenance of Morrow Dam, and environmental impacts. They argue that because the alleged conduct is within the scope of FERC's regulatory authority, the standard of care exclusively arises under federal law. They cite 16 U.S.C. § 825p, which establishes exclusive federal jurisdiction for "violations of this chapter [of the FPA] . . . and of all suits in equity and actions at law brought to enforce any liability or duly created by, or to enjoin any violation of this chapter [of the FPA] . . . ." Based on this provision, Defendants say "this Court has exclusive federal question jurisdiction over this litigation." (ECF No. 19, at PageID.389.)

Defendants misinterpret the reach of this provision. If Plaintiffs had pleaded claims under the FPA or FERC rules administering the FPA, Defendants would have a good argument under the statute. But Plaintiffs did not do that. They raised exclusively state law statutory and common law claims, and so Plaintiffs' complaint is not a lawsuit aimed at enforcing the FPA. Here, Plaintiffs are simply seeking to enforce state statutory and common law standards of care. Even if the Court must interpret or apply the FPA and FERC's regulations in the course of resolving the state law claims, that does not confer jurisdiction. "The fact that a court must apply federal law to a plaintiff's claims or construe federal law to determine whether the plaintiff is entitled to relief will not confer federal subject matter jurisdiction—the implicated federal issue must be substantial." 13D C. Wright & A. Miller, *Federal Practice & Procedure*, § 3564 (3d Ed.) (quoting *Dunlap v. G&L Holding Group, Inc.*, 381 F.3d 1285, 1291–1292 (11th Cir. 2004)).

Defendants cite *Sherr v. South Carolina Electric & Gas Co.*, 180 F. Supp. 3d 407, 417 (D.S.C. 2016), but the case is readily distinguishable. In *Sherr*, private homeowners sued a dam operator for damage caused by flood waters released by the dam's floodgates. Plaintiff sued in State Court on negligence and other state law theories. The dam operator removed under *Grable*, and the district court denied remand because Plaintiff's own complaint alleged only the terms of the operator's FERC license as defining the controlling standard of care. Here, Plaintiffs make no such assertion. To the contrary, Plaintiffs claim the relevant duties of care are established by state law rules.

In addition, Defendants assert in conclusory terms that Counts I through IV under the NREPA directly implicate federal law and require the Court to interpret federal issues. Defendants note four sections of NREPA that reference federal law. Section 324.1706 of NREPA provides that "this part is supplementary to existing administrative and regulatory procedures provided by law." Section 324.1704(2) states that "[i]f administrative, licensing, or other proceedings are required or available to determine the legality of the defendant's conduct, the court may direct the parties to seek relief in such proceedings." Section 324.3106 allows the State to "set permit restrictions that will assure compliance with applicable federal law and regulations." Lastly, Part 301 provides an exemption to the permit requirement for FERC licensees. Though the statute mentions federal law in these sections, Defendants fail to show how the Court must resolve a federal question in this case. Just because the statute mentions federal law does not mean that federal law needs to be interpreted or applied. Parties disagree on whether the exemption under Part 301 applies to Defendants, but that issue is not an essential element of the claim because if the exemption applies, Plaintiffs still claim that Defendants did not meet the standard of the exemption. *Funderwhite v. Loc. 55, United Ass'n*, 702 F. App'x 308, 312 (6th Cir. 2017) (noting

that "the disputed question of federal law must be a 'necessary element' of the state law claim, such that the state law claim is 'really one of federal law.'") (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California,* 463 U.S. 1, 13 (1983)).

Defendants also argue that if the Court finds Defendants liable, the appropriate remedy will include ordering Defendants to restore and to repair the damage they caused. According to Defendants, this would then require the Court to interpret federal law and would need approval from the EPA and the United States Army Corps of Engineers. This issue does not satisfy the *Grable* test. There is no federal agency that is party to this case. Nor is the possibility of a specific remedy controlling or dispositive in any way; it is simply a remedial question to reach if, and only if, Plaintiffs first establish a right to relief of any kind under one or more of the state law causes of action. Liability will turn on fact-intensive questions and principles of state law, not a hypothetical question of how a potential remedy may or may not tread on some federal right. And any remedial issue will similarly turn on fact specific issues, not federal legal issues.

Lastly, Defendants assert that the federal interest present here is substantial. Defendants provide: "the actions and regulations of FERC are the central focus of this case"; any decision will "impact a complex federal regulatory scheme"; a determination that FPA and FERC govern STS Hydropower's duties and obligations could dispose of Plaintiffs' state law claims; and a decision on federal issues will likely have national repercussions. The Court is not persuaded by these arguments. "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit . . . The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Gunn v. Minton*, 568 U.S. 251, 260 (2013). Here, the State of Michigan has a direct interest in vindicating environmental interests defined and protected by Michigan law. The claims do not depend on any determination of federal question, and the issues

9

under Michigan law are not important to the federal system as a whole. Overall, the federal government's interest pales in comparison to the State's interest. *See Grable*, 545 U.S. at 315 (finding a substantial federal question because the federal government "has a direct interest in the availability of a federal forum to vindicate its own administrative action").

### B. Balancing Favors State Judicial Power

Even if Plaintiffs' state-law claims necessarily raise a federal issue that is actually disputed and substantial under *Grable*, the Court's exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities. Defendants argue that the Court must exercise jurisdiction to preserve the balance between federal and state judicial responsibilities. FPA provides that federal courts "shall have exclusive jurisdiction of violations" created by the FPA or FERC. 16 U.S.C. § 825p. Defendants contend that since Plaintiffs' claims fall within the scope of FPA and FERC's regulatory authority, only federal court has jurisdiction.

The Court rejects this argument. To determine whether finding jurisdiction would upset the balance between federal and state powers, the Court must consider whether exercising jurisdiction would "herald[] a potentially enormous shift of traditionally state cases into federal courts." *Grable*, 545 U.S. at 319. That is exactly what Defendants' theory would do. It would read the FPA as essentially ensuring federal jurisdiction whenever a case touches in any way on the operations of a FERC licensed or exempt dam. This would convert all run-of-the-mill property disputes normally resolved by state law into federal cases. That is especially inappropriate here where Plainfiffs are not simply private property owners but arms of the State of Michigan charged by the State's Constitution with protecting the environmental resources of the State and its citizens. Congress quite properly sought to provide a federal forum for cases arising directly under the FPA and FERC, but this is not one of those cases. Congress did not mean to create a special

jurisdictional pathway to federal court for every FERC-regulated dam operator that allegedly causes environmental harm to other property owners or to a State's natural resources. To the contrary, "[e]nvironmental regulation is a field that the states have traditionally occupied." *Merrick v. Diageo Americas Supply, Inc.*, 805 F.3d 685, 694 (6th Cir. 2015).

### C.  No Jurisdiction Based on Preemption

Finally, Defendants suggest that the FPA exclusively occupies the field of public water use and power generation, except as identified in Section 821 and that this may be a pathway to complete preemption. The Court disagrees. There is no complete preemption. *Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 707 F.3d 883, 893–94 (7th Cir. 2013), *as amended* (Apr. 29, 2013) ("We agree with nearly all of the other courts that have considered the question and conclude that the Federal Power Act does not completely preempt state law."). Complete preemption is only recognized in limited cases, including ERISA, the Labor Management Relations Act, the National Bank Act, and under portions of the Federal Communications Act. *Id.* at 894. Defendants do not provide any authority to suggest the FPA provides complete preemption. At most, Defendants have identified a possibility that they may have a federal preemption defense to some aspects of Plaintiffs' case. Maybe so. But that does not create a basis for subject matter jurisdiction: "[S]ince 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 14 (1983). Defendants may assert any available federal preemption defenses in the State Court.

## IV. CONCLUSION

Because the Court lacks subject matter jurisdiction, this action must be remanded. The Court therefore grants Plaintiffs' Motion to Remand.

Defendants have also filed a Motion to Dismiss. (ECF No. 8.) The Court does not resolve the Motion before remand and leaves the issue to the State Court.

**ACCORDINGLY, IT IS ORDERED**:

The case is **REMANDED** to the Circuit Court for the 30th Judicial Circuit, Ingham County, Michigan based on lack of subject matter jurisdiction.

Dated:    July 1, 2022                  /s/ Robert J. Jonker
                                         ROBERT J. JONKER
                                         CHIEF UNITED STATES DISTRICT JUDGE